THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| DENNIS D. SPURLING,<br><br>Plaintiff,<br><br>v.<br><br>FABRICE NELSON a.k.a.<br>NEFERKARE T. DESSALINES,<br><br>Defendant. | Civil Action No.<br><br>**COMPLAINT AND JURY DEMAND** |

**COMPLAINT FOR DEFAMATION (LIBEL AND SLANDER), DEFAMATION PER SE (LIBEL AND SLANDER), BUSINESS DISPARAGEMENT, TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND JURY DEMAND**

Plaintiff Dennis D. Spurling ("Plaintiff" or "Mr. Spurling" or "He" or "His"), by and through undersigned counsel, files this Complaint and Jury Demand against Defendant Fabrice Nelson also known as Neferkare T. Dessalines ("Defendant"), and respectfully alleges the following:

### I. PARTIES

**Plaintiff Dennis D. Spurling**

1. Plaintiff Dennis D. Spurling is an attorney licensed to practice law in Arkansas, Illinois, Louisiana, Michigan, New York, and Texas. Mr. Spurling is also admitted to practice before the United States Fifth Circuit Court of Appeals and the United States Supreme Court. Mr. Spurling was inducted into the Southern University Law Center (Baton Rouge, Louisiana) Hall of Fame for attorneys in 2024. He maintains his principal office at 3003 South Loop West, Suite 400, Houston, Texas 77054, and conducts legal and advocacy work in New York, including through online platforms accessible to New York residents.

### Defendant Fabrice Nelson also known as Neferkare T. Dessalines

2. Defendant Fabrice Nelson also known as "Neferkare T. Dessalines," is a natural person residing at 14 Greenlawn Blvd, Valley Stream, NY 11580, within the jurisdiction of this Court.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship), as Plaintiff is a citizen of Texas, Defendant is a citizen of New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant, who resides in this district and directed defamatory content to an audience that includes New York residents, causing harm to Plaintiff's professional reputation in New York, where he is licensed to practice law.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant resides in this district, and a substantial part of the events giving rise to the claims—publication of defamatory content and resulting harm—occurred in this district through online platforms accessible to New York residents.

## III. FACTUAL BACKGROUND

6. Plaintiff Dennis D. Spurling is a licensed attorney, media personality, and advocate for reparative justice, known for presenting legal arguments in public forums, including YouTube, podcasts, X, and other digital platforms. He maintains an active law practice in New York, Illinois, and Texas, representing clients and engaging in protected speech on domestic and international legal issues affecting the African diaspora.

7. Plaintiff, as a public figure due to his media presence and advocacy, relies on his professional reputation and public credibility to secure clients, speaking engagements, and advocacy collaborations.

8. Between May 4 and May 7, 2025, Defendant, operating under the pseudonym "Neferkare T. Dessalines," uploaded two defamatory videos to his YouTube channel, which collectively garnered over 11,000 views:

  a. "Failed Lawyer Wants to SUE AFRICA for 'Selling Him Into Slavery' (REACTION)," uploaded May 4, 2025, with over 8,500 views.

  b. "Failed Lawyer Explains Why He's Scared to Ask The White Man for Reparations (REACTION)," uploaded May 7, 2025, with over 4,600 views.

9. These videos contained false and defamatory statements, presented as fact, including labeling Plaintiff as:

  a. A "failed lawyer,"

  b. A "weed carrier" for the late Kevin Samuels,

  c. A "sloppy and disheveled dude,"

  d. A "coward in a cheap suit,"

  e. A "secretary,"

  f. A "charlatan,"

  g. A "fake revolutionary," and

  h. A "clout chaser just trying to get AdSense money."

10. Defendant further asserted that Plaintiff:

  a. Lacks professional competence, stating his legal arguments are "nonsense" and he is "not a real lawyer."

  b. Has "no political backing," "no leverage," and is "wasting everybody's time."

  c. Has a professional reputation and lawsuits that are laughable and would be "shredded and thrown in the garbage" by U.S. officials.

11. Defendant distorted Plaintiff's reparations advocacy, falsely claiming Plaintiff was cowardly and afraid to confront European nations, and mocked his appearance, character, and work ethic with racialized insinuations.

12. Defendant knew these statements were false or acted with reckless disregard for their truth, as evidenced by:

   a. His deliberate misrepresentation of Plaintiff's legal arguments, which are publicly available and verifiable.

   b. His failure to verify Plaintiff's credentials as a licensed attorney in multiple states.

   c. His pattern of targeting Plaintiff's professional reputation to provoke audience hostility and drive monetized engagement.

13. Defendant monetized these videos through solicitations for financial contributions via:

   a. Cash App: $NelsonAmadeus

   b. PayPal: GlobalHitsWorld@gmail.com

   c. Email promotions: KingNeferkare@gmail.com

   d. Social media handles: @NTDessalines (X), @NelsonAmadeus (Instagram).

14. Defendant's audience, including New York residents, engaged with the content, posting hundreds of comments that echoed the defamatory statements, calling Plaintiff a "clown," "fool," "scammer," "disgrace," and suggesting he be disbarred. Examples include:

   a. "He needs a straight jacket, not a law degree."

   b. "He's trying to scam us all with this fake lawsuit."

15. Defendant did not correct or retract these statements, instead pinning donation links beneath the videos and continuing to promote false narratives, demonstrating actual malice.

16. As a result, Plaintiff suffered:

a. Economic damages, including lost clients, canceled speaking engagements, and disrupted advocacy partnerships, with estimated losses exceeding $100,000.

   b. Reputational harm in the legal and advocacy communities, particularly in New York, where he is licensed.

   c. Emotional distress, documented through personal statements describing anxiety, humiliation, and mental anguish caused by the public ridicule.

17. Defendant's actions were willful, malicious, and intended to harm Plaintiff's professional standing and business prospects while enhancing Defendant's own commercial interests.

## IV. CLAIMS FOR RELIEF

### Count I: Defamation – Libel (New York Law)

18. Plaintiff incorporates by reference paragraphs 1 through 17.

19. Defendant published false and defamatory written statements about Plaintiff via YouTube videos and associated text (e.g., video titles, descriptions, pinned comments) on May 4 and May 7, 2025, accessible to a global audience, including New York residents.

20. These statements, including calling Plaintiff a "failed lawyer," "charlatan," and "clout chaser," were factual assertions, not opinions, and were defamatory per se as they impugned Plaintiff's professional competence and integrity.

21. Defendant acted with actual malice, knowing the statements were false or with reckless disregard for their truth, as he misrepresented Plaintiff's verifiable legal work and credentials.

22. The statements caused Plaintiff reputational harm, economic losses, and emotional distress, with damages exceeding $75,000.

### Count II: Defamation – Libel Per Se (New York Law)

23. Plaintiff incorporates by reference paragraphs 1 through 22.

24. Defendant published false and defamatory written statements, including video titles and descriptions, on May 4 and May 7, 2025, specifically asserting that Plaintiff is a "failed lawyer," "not a real lawyer," and "charlatan," which directly tend to injure Plaintiff in his trade, business, and profession as a licensed attorney.

25. These statements are defamatory per se under New York law, as they falsely attack Plaintiff's professional competence and integrity, causing presumed damages without the need to prove special damages.

26. Defendant acted with actual malice, knowing Plaintiff is a licensed attorney in New York, Illinois, and Texas, or with reckless disregard for the truth, as he failed to verify Plaintiff's credentials.

27. As a result, Plaintiff suffered presumed and actual damages, including reputational harm and emotional distress, in an amount exceeding $75,000.

### Count III: Defamation – Slander (New York Law)

28. Plaintiff incorporates by reference paragraphs 1 through 27.

29. Defendant published false and defamatory oral statements in the audio of the YouTube videos, including calling Plaintiff a "coward," "fake revolutionary," and "not a real lawyer," which were heard by thousands, including New York residents.

30. These statements were defamatory, attacking Plaintiff's professional reputation and character, and were made with actual malice.

31. The statements caused Plaintiff reputational harm, economic losses, and emotional distress, with damages exceeding $75,000.

### Count IV: Defamation – Slander Per Se (New York Law)

32. Plaintiff incorporates by reference paragraphs 1 through 31.

33. Defendant published false and defamatory oral statements in the YouTube videos on May 4 and May 7, 2025, specifically asserting that Plaintiff is a "failed lawyer," "not a real lawyer," and "wasting everybody's time," which directly tend to injure Plaintiff in his trade, business, and profession as a licensed attorney.

34. These statements are defamatory per se under New York law, as they falsely attack Plaintiff's professional competence and integrity, causing presumed damages without the need to prove special damages.

35. Defendant acted with actual malice, knowing Plaintiff's professional status or with reckless disregard for the truth, as he misrepresented Plaintiff's legal work and credentials.

36. As a result, Plaintiff suffered presumed and actual damages, including reputational harm and emotional distress, in an amount exceeding $75,000.

**Count V: Business Disparagement (New York Law)**

37. Plaintiff incorporates by reference paragraphs 1 through 36.

38. Defendant published false and disparaging statements about Plaintiff's law practice and advocacy work, including claims that Plaintiff is "not a real lawyer" and is "wasting the government's time," with the intent to harm Plaintiff's economic interests.

39. These statements were made with actual malice and caused specific pecuniary losses, including:

    a. Lost client engagements, valued at approximately $50,000.

    b. Canceled speaking engagements, valued at approximately $30,000.

    c. Disrupted advocacy partnerships, valued at approximately $20,000.

40. The statements diminished Plaintiff's credibility in the legal and advocacy communities, particularly in New York.

**Count VI: Tortious Interference with Prospective Business Relations (New York Law)**

41. Plaintiff incorporates by reference paragraphs 1 through 40.

42. Plaintiff had reasonable expectations of entering into business relationships, including legal contracts, speaking engagements, and advocacy collaborations, particularly in New York, where he is licensed.

43. Defendant intentionally interfered with these prospects by publishing defamatory content, soliciting donations to amplify its reach, and inciting audience hostility, including comments urging others not to work with Plaintiff.

44. Defendant's actions were wrongful and malicious, leveraging false statements to harm Plaintiff's business while promoting his own commercial interests.

45. As a result, Plaintiff suffered economic losses and reputational harm, with damages exceeding $75,000.

**Count VII: Intentional Infliction of Emotional Distress (New York Law)**

46. Plaintiff incorporates by reference paragraphs 1 through 45.

47. Defendant's extreme and outrageous conduct—publishing defamatory videos with racialized insults, mocking Plaintiff's appearance and character, and inciting public ridicule—exceeded the bounds of decency.

48. Defendant acted with intent to cause, or reckless disregard for causing, severe emotional distress, as evidenced by his monetization of the content and failure to retract false statements.

49. Plaintiff suffered severe emotional distress, documented through personal statements describing anxiety, humiliation, and mental anguish, requiring professional support.

50. Defendant's conduct proximately caused Plaintiff's emotional distress, with damages exceeding $75,000.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award compensatory damages in an amount to be determined at trial, but not less than $250,000;

B. Award punitive damages for Defendant's willful and malicious conduct;

C. Grant permanent injunctive relief prohibiting Defendant from:

  a. Maintaining or publishing the defamatory videos on YouTube or any platform;

  b. Making further public statements about Plaintiff on YouTube, X, Instagram, or other social media platforms;

  c. Engaging in conduct that defames or disparages Plaintiff;

D. Award Plaintiff his costs and reasonable attorney's fees;

E. Grant such other and further relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: New York, New York
June 17, 2025

s/ Brian L. Ponder
Brian L. Ponder, Esq.
BRIAN PONDER LLP
TRIAL LAWYERS
745 Fifth Avenue, Suite 500
New York, New York 10151-0099
Telephone: (646) 450-9461
Email: brian@brianponder.com
ATTORNEY FOR PLAINTIFF